[No. D014952. Fourth Dist., Div. One. Feb. 22, 1993.]

CORONADO YACHT CLUB, Plaintiff and Respondent, v.
CALIFORNIA COASTAL COMMISSION, Defendant and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Jan S. Stevens, Assistant Attorney General, Richard M. Frank, Acting Assistant Attorney General, and Jamee Jordan Patterson, Deputy Attorney General, for Defendant and Appellant.

O'Connor, Packer & Wilcox, Arthur M. Wilcox, Jr., J. Robert O'Connor III and Lori L. Dunivan for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—The California Coastal Commission (Commission) appeals a judgment issuing a peremptory writ of mandate (Code Civ. Proc., § 1085) commanding the San Diego Unified Port District (Port District) to issue the

coastal development permit previously approved by its Board of Port Commissioners to the Coronado Yacht Club (Club), and issuing a peremptory writ of administrative mandamus (Code Civ. Proc., § 1094.5) directing the Commission to set aside its appellate decision to issue its own conditional coastal development permit to the Club. The court reasoned that by the time the Commission issued its decision on appeal it no longer had jurisdiction to act upon the challenge to the Port District's approval of the Club's coastal development permit pursuant to Public Resources Code[1] section 30625.

The Commission contends it retained jurisdiction over the Port District permit decision appeal by opening its hearing on the appeal within 49 days of the filing of the appeal as required by sections 30621 and 30625, although once it found the appeal raised a substantial issue it continued further hearing to a date beyond the 49 days' limitation. Alternatively, the Commission asserts the Club waived any defect in appellate jurisdiction by failing to object to its announced intent to resolve first the question of whether the appeal raised a substantial issue and to continue its de novo hearing on the appeal to a date beyond the limitations period. Finally, the Commission argues the trial court's ruling improperly adversely affects constitutional rights of third parties. For the following reasons, we conclude the Commission's construction of the procedural requirements of the California Coastal Act (Act) is reasonable and that it retained jurisdiction over this appeal by opening its hearing on the matter under section 30621 within 49 days of the filing of the appeal, resolving whether it raised a substantial issue and then continuing the matter to a date beyond the 49 days' limitation. Accordingly, we reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 16, 1990, the Port District approved the Club's permit application for construction of an approximately 640-foot-long main float/dock extension including 18 new finger floats, 48 new slips, electrical and water utilities and some repair and refurbishment of existing facilities. This development was designed to be constructed on public tidelands leased by the Club from the Port District. The Port District's decision was appealed on October 30, by Jane Dillon, a representative of a group known as the Bay Users Group of San Diego, to the Commission under the Act.

At the regularly scheduled monthly meeting of the Commission held on December 11, attended by Dillon and representatives of both the Port District and the Club, the Commission's staff recommended Dillon's appeal be heard because a substantial issue existed as to whether the permit

---

[1]All statutory references are to the Public Resources Code unless otherwise specified.

conformed to the Port District's master plan previously approved by the Commission. At the outset of the hearing, three commissioners decided to hear debate on the question of whether the appeal raised a substantial issue. The executive director then declared the Commission would only be resolving that issue and, if a substantial issue was in fact found, "the matter would then come back at a subsequent hearing with a recommendation from the staff based on a de novo hearing." The Commission then proceeded to solicit information from Dillon and representatives from the Port District and Club regarding whether a substantial issue existed. Following discussion, the Commission concluded the permit application raised a substantial issue and the chairman declared a de novo public hearing would be set at a later date. In January, the Commission notified the parties the de novo hearing would occur at the March meeting in Los Angeles, because the matter had triggered a substantial controversy and Los Angeles would be more accessible to interested parties. By letter dated January 11, 1991, the Club requested the matter be scheduled for de novo consideration at the hearing's February meeting in San Francisco, expressing concern that if the Commission approved the permit the prohibition against development during the least tern nesting season commencing April 1, would preclude action on the permit until the season was over. On January 22, the Commission found the Club's concern valid and rescheduled the matter for the February meeting.

By letter dated January 28, the Club's counsel advised the Commission (1) its request on January 11 for rescheduling the matter from the March meeting to the February meeting was not intended to waive or extend any time limit imposed by the Act with regard to the hearing of an appeal, but was rather an expression of its concern that if the Commission had jurisdiction to hear the appeal it should be heard as soon as possible; and (2) because the Commission failed to hold a de novo hearing within the 49-day limitation period which expired on December 18, 1990, it was without jurisdiction to hear the appeal and the Club was entitled to immediate issuance of the Port District's permit. The Commission heard the matter de novo on February 5. The Club participated in the proceedings only after its counsel advised the Commission such participation should not be construed as a waiver of any right to contest the jurisdiction of the Commission and validity of the proceeding. The Commission approved the Club's proposed development subject to two special conditions requiring the Club to provide evidence that its bylaws governing membership policy expressly declared the Club would not discriminate on the basis of race, sex, national origin, or religion, and to revise its project plans to provide for the conversion of 12 private parking spaces located on its property to public parking spaces with appropriate signage.

On February 28, the Club made a written demand upon the Port District to issue its permit. On March 1, the director declined, explaining the Port

District was without jurisdiction to do so. On March 5, the Commission's counsel notified the Club and the Port District that the Commission believed jurisdiction remained with it to issue its permit and that the Port District had no jurisdiction to issue its permit. On March 13, the Club petitioned for a writ of mandate (Code Civ. Proc., § 1085) seeking issuance of the Port District permit. Following a trial court order finding the Commission was an indispensable party to the proceeding, the Club amended its application for a writ of mandate to include the Commission as a party and to assert the additional causes of action for relief (Code Civ. Proc., § 1094.5). Following a trial court order bifurcating the causes of action relating to the issuance of the Port District permit and the Commission's jurisdiction to hear the appeal of that permit, the trial court directed the Port District to issue its permit and set aside the Commission's claim of jurisdiction. Regarding the latter, the court declared from the bench the December 11, 1990, hearing "was clearly a hearing on a substantial issue, as I have referred to earlier, and not a de novo hearing. I've read Public Resources Code sections 3[0]621, 3[0]625. The Commission's own regulations clearly show a substantial issue determination and the de novo hearing are separate.

"Regulation 13115(c) states the Commission may ask questions of the applicant and aggrieved person, the attorney general or the executive director, prior to determining whether or not to hear an appeal. That's what happened at the December 11th hearing. In fact, Miss Dillon was expressly cut off when she began to address the merits.

"It is clear from the transcript of the proceeding that the substantial issue hearing was not a public hearing in the sense that most people think of it. In addition, it is clear that this interpretation is one that the Commission itself made. And they clearly differentiate between a limited substantial issue hearing and a public de novo hearing. No public de novo hearing was set within 49 days, and I find that the plaintiff prevails on this issue.

"Further, I don't believe there was any sort of a waiver. I am familiar with the concept of waiver, both in criminal and civil law context. Here, when petitioner was present at the relevant time, what was said was, 'we'll have a de novo hearing at some point subsequent.' I might have felt differently if they'd said, 'well, we're going to set the de novo hearing for such-and-such a date,' and allowing plaintiff to stand or petitioner to stand up and say, 'Your Honor, we object. That's beyond the 49 days.'

"But all that was said was, 'We will set a de novo hearing at some point subsequent.'

"I don't think it is unrealistic to expect that the petitioners at that point are allowed to believe that the hearing would be set within 49 days. There's no obligation affirmatively to [insist] on a date at that point."

Final judgment was entered on May 20, 1991. Both the Commission and Port District appealed, with the latter refusing to issue its permit. However, after the trial court lifted its stay pending appeal, the Port District issued its permit and later withdrew its appeal.

### THE COMMISSION RETAINED APPELLATE JURISDICTION OVER THE PORT DISTRICT PERMIT AFTER THE DECEMBER MEETING

■■■ Conceding the Commission did not consider the Club's appeal de novo within 49 days of the filing of the administrative appeal, the Commission contends it was not required to do so under the statutory scheme in order to maintain jurisdiction. Rather, it asserts it complied with the Act when it conducted a public hearing within 49 days of the filing of the appeal, considered the threshold issue of whether the appeal presented a substantial issue and then continued the hearing to an undesignated later date. The Club responds that section 30621 can only be read and construed to require a permit applicant be afforded an opportunity to present testimony on the merits of the appeal at a de novo hearing within 49 days.

Under the Act, Port District decisions involving permits for development of recreational marina small craft facilities are appealable to the Commission. (§ 30715, subd. (a)(4).) The Port District's decision becomes final after the tenth working day following notification of its approval, unless an appeal is filed with the Commission within that time. (§ 30717.) Appeals shall be filed and processed by the Commission in the same manner as appeals from local government actions as set forth in sections 30600 through 30627. (§ 30717.)

Section 30621 requires the Commission to provide a de novo public hearing on any appeal brought pursuant to the Act. Section 30621 further provides that a hearing on "an appeal shall be *set* no later than 49 days" (italics added) following the date the appeal was filed with the Commission. The cited language "a hearing" includes the "de novo public hearing" on the merits, because section 30621 contemplates only one hearing as indicated by the language in section 30622 which requires the Commission to act upon an appeal "within 21 days after the conclusion of *the hearing* pursuant to Section 30621." (Italics added.) The failure of the Commission to either "set" a de novo public hearing within 49 days following the filing of an appeal with the Commission or to act upon an appeal within 21 days after the conclusion of the section 30621 hearing results in immediate finality of

the appealed decision unless either time limit is waived by the applicant. (§ 30625, subd. (b).)

Section 30625 further provides the Commission shall hear an appeal unless it determines no substantial issue exists as to conformity with the certified port master plan. (§ 30625, subd. (b)(3).) The Commission assumes an appeal raises a substantial issue and proceeds to hear the matter de novo unless three commissioners desire to hear debate on the question of substantial issue. Mindful whether a substantial issue exists constitutes the threshold jurisdictional determination before entertaining an appeal, the Commission argues the references in section 30621 to "a hearing" and "an appeal" and in section 30625 to "shall hear an appeal unless" no substantial issue exists underscore the Legislature only contemplated a single hearing. Consequently, it asserts that because section 30621 requires only that *a hearing* on appeal be "set no later than 49 days" and in fact it set a hearing on this appeal for December 11, 1990, the requirements of section 30621 were satisfied.

The Commission relies further on its regulations which similarly contemplate holding only one hearing on an appeal. First, California Code of Regulations, title 14, section 13112 provides that where the Commission fails to receive the record relied upon by the local government, the Commission shall set the matter for hearing, leaving the hearing open until all relevant materials are received. Second, the executive director after the filing of the appeal is required to make a recommendation as to whether the appeal raises a substantial issue at the Commission's next hearing. (Cal. Code Regs., tit. 14, § 13115, subd. (a).) The Commission notes no similar provision exists requiring a recommendation on the de novo portion of the appeal be made at the next meeting. However, the Commission cannot vote on a permit matter unless it has received a staff recommendation. (Cal. Code Regs., tit. 14, § 13090.) Consequently, the Commission argues that while the substantial issue question must be resolved within 49 days, de novo consideration of the merits is not required to be obtained within that narrow time frame. Rather, by reading these regulations and statutes together, it asserts it only holds one public hearing on an appeal and unless a majority of the Commission votes not to hear the appeal because no substantial issue was raised, the Commission considers the matter immediately de novo. However, where three commissioners wish to hear debate on the question of substantial issue, the Commission will proceed to first resolve whether it has jurisdiction before addressing the merits of the appeal de novo.

The Club counters on appeal, asserting the statutory scheme and the Commission's regulations and procedures are devoid of any indication a de

novo hearing was contemplated to be commenced by the determination of a substantial issue. Rather, the Club points out that section 30621 specifically provides for a "de novo hearing," not simply a determination by the Commission jurisdiction exists. In fact, the Club accurately points out the statutory scheme does not require the Commission to hold a "substantial issue" hearing to determine its jurisdiction. To the contrary, section 30625, subdivision (a) provides the Commission must hear an appeal unless it finds no substantial issue. As the executive director of the Commission explained at the December 11, 1990, hearing, a permit applicant is ordinarily not even afforded the opportunity to hear the issue of jurisdiction since the Commission presumes the existence of a "substantial issue" when an appeal is taken unless three commissioners desire to hear debate on that issue. Finally, the Club argues that the Commission's interpretation of the statutory and regulatory scheme relating to de novo hearings fails to satisfy the minimum requirements of constitutional due process by failing to afford a party the opportunity to offer evidence on the merits of the matter within the 49-day time limit within section 30621. Consequently, no "de novo hearing" was held within the jurisdictional time limit.

■ Preliminarily, the Commission's administrative construction of its governing laws through its regulations is entitled to great weight in determining what the Legislature intended when it enacted the statutory scheme in controversy. (*City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1021 [162 Cal.Rptr. 224].) However, " '[w]hatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts.' " (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697], quoting *Whitcomb Hotel* v. *California Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]; *Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 67 [141 Cal.Rptr. 146, 569 P.2d 740].) Nevertheless, "[a] court will not depart from such construction unless it is clearly erroneous." (*REA Enterprises* v. *California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 611 [125 Cal.Rptr. 201], fn. omitted; *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 138 [98 Cal.Rptr. 281, 490 P.2d 793].) ■■■■ Accordingly, guided by the firmly established rules of statutory construction,[2] we first review the legislative genesis of the Act, the Coastal Protection Initiative of 1972 (Initiative), which upon passage by the electorate resulted

---

[2]"The most fundamental rule of statutory construction is that 'the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.] The court first looks to the language of the statute, attempting to give effect to the usual, ordinary import of that language and seeking to avoid making any language mere surplusage. Significance if possible should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.] '[T]he various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory

in the California Coastal Zone Conservation Act of 1972 (Prop. 20), former section 27000 et seq. Pursuant to former section 27420, subdivision (a), the Commission was authorized to prescribe procedures governing permit applications and their appeals.[3] Former section 27423, subdivision (b) required the Commission to act on an appeal within 60 days after the filing of the notice of appeal or otherwise the regional Commission's decision would become final. This requirement to act within 60 days of the filing of the notice of appeal was present even though former section 27423, subdivision (c) provided the Commission could decline to hear appeals that it determined raised no substantial issues and for those appeals that it did hear it was required to hold a de novo public hearing. Under former section 27240, subdivision (d), the Coastal Zone Conservation Act empowered the Commission to adopt any regulations or take any action it deemed reasonable and necessary to carry out its provisions. The comprehensive code of regulations was adopted (former Cal. Admin. Code, tit. 14, div. 5.5, § 13001 et seq.). Under former California Administrative Code section 13931, the Commission was required to schedule and determine appeals in such a fashion so that final action was obtained within 60 days of the date the appeal was filed, unless a request for an extension of the 60-day period was made and granted. (See *REA Enterprises* v. *California Coastal Zone Conservation Com.*, *supra*, 52 Cal.App.3d at p. 602, fn. 6.)

As mandated by the Initiative, the California Coastal Zone Conservation Commission submitted its California Coastal Plan to the Legislature on December 1, 1975, containing 162 policies to guide the state's management of coastal resources. (Sen. Com. Rep. on Cost Control, Rep. on the Cal. Coastal Com. (1989) p. 17.) Although the proposed plan, at page 185, impliedly declared that the time limitations governing the appeal process should remain unchanged, the Legislature in 1976 in enacting the present Act provided, in former section 30621 governing de novo public hearings, that a hearing on an appeal shall be set no earlier than 21 days nor later than

---

framework as a whole.' [Citation.] Further, wherever possible, the statute will be construed in harmony with the Constitution. [Citation.] The provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. [Citations.] ' "The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction." ' [Citations.]" (*Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1136, fn. 11 [203 Cal.Rptr. 886].)

[3]Interestingly, regarding the regional Commission, former section 27420, subdivision (b) employed the similar "setting" language, to wit: "The regional commission shall give written public notice of the nature of the proposed development and of the time and place of the public hearing. Such hearing shall be set no less than 21 or more than 90 days after the date on which the application is filed."

42 days after the date on which the appeal is filed with the Commission. Read with former section 30622 requiring the Commission to act within 21 days of the conclusion of the section 30621 hearing, the apparent legislative intent underlying this provision was that: the Commission had 21 to 42 days *to schedule* a hearing on appeal, a decision was required within 21 days of that hearing, and all hearings of the Commission were to be de novo. (Assem. Amends. to Sen. Bill No. 1277 (1975-1976 Reg. Sess.) Aug. 12, 1976; Assem. Com. on Resources, Land Use and Energy, Analysis of Sen. Bill No. 1277 (1975-1976 Reg. Sess.) as amended Aug. 5, 1976; *Review of Selected 1976 California Legislation* (1977) 8 Pacific L.J. 165, 362.) In 1978, the minimum length of time of 21 days after the date on which the appeal is filed with the Commission before which an appeal may be set was deleted. (Stats. 1978, ch. 1075, p. 3305, § 16, eff. Sept. 26, 1978.) In 1979, the outer limit of 42 days was changed to 49 days. (Stats. 1979, ch. 919, § 14, p. 3188.)[4]

Noticeably absent from the provisions of the Act was the former 60-day limitation placed upon the Commission to act upon an appeal, designed "to eliminate as far as possible the effect of bureaucratic delay upon the rights of owners of real property in the use of such property." (*Klitgaard & Jones, Inc.* v. *San Diego Coast Regional Com.* (1975) 48 Cal.App.3d 99, 110 [121 Cal.Rptr. 650].) The omission of the former jurisdictional time limit (*ibid.*; *City of Coronado* v. *California Coastal Zone Conservation Com.* (1977) 69 Cal.App.3d 570, 577 [138 Cal.Rptr. 241]) was viewed by one Court of Appeal as bringing the Commission within the purview of Government Code section 65952,[5] which permits an overall period of 180 days for a public entity to act. (*Bel Mar Estates* v. *California Coastal Com.* (1981) 115 Cal.App.3d 936, 940 [171 Cal.Rptr. 773].) However, Government Code section 65922 expressly provides the provisions of the Permit Streamlining Act (including Gov. Code, § 65952) shall not apply to "administrative appeals within a state or local agency or to a state or local agency." (*Ciani* v. *San Diego Trust & Savings Bank* (1991) 233 Cal.App.3d 1604, 1615 [285 Cal.Rptr. 699].) Nevertheless, a de novo hearing held pursuant to section 30621 within that provision's outer time limit (formerly 42 days, now 49

---

[4]This language has been construed as providing "the hearing may be held at any time within 42 days from the date the application is submitted [§ 30621]." (*Review of Selected 1978 California Legislation* (1979) 10 Pacific L.J. 247, 498.)

[5]Government Code section 65952 was enacted in 1977. (Stats. 1977, ch. 1200, § 1, p. 3993.) The express legislative intent was that this statutory scheme would apply to all public entities so as "to ensure clear understanding of the specific requirements which must be met in connection with the approval of development projects and to expedite decisions on such projects." (Gov. Code, § 65921; *Palmer* v. *City of Ojai* (1986) 178 Cal.App.3d 280, 286 [223 Cal.Rptr. 542].)

days) may be continued after each side orally argued the merits of the matter without violating the 21-day limitation for action following the conclusion of a hearing pursuant to section 30622. (*Bel Mar Estates* v. *California Coastal Com.*, *supra*, 115 Cal.App.3d at p. 940.)

The foregoing legislative history and judicial construction persuade us the Commission's administrative construction of the statutory scheme is neither unreasonable nor clearly erroneous. Although the 49- and 21-day time limitations remain jurisdictional under the Act in light of section 30625, subdivision (a) designed to avoid unnecessary bureaucratic delay, the 49-day limitation cannot be construed in a vacuum, ignoring the Legislature's implied decision in enacting the Act to no longer shackle the Commission with the Initiative's 60-day limit to resolve an appeal. Given that the Commission has the authority to continue appeal hearings without any express statutory limitation for acting on an appeal following the scheduling of a hearing except rendering its decision within 21 days after the conclusion of the section 30621 hearing, it appears the Commission's interpretation of the term "set" to mean to be "held" within 49 days of the filing of the appeal, rather than merely being "scheduled," is reasonable, consistent with the underlying public policy and legislative intent of avoiding bureaucratic delay. Arguably, the Commission could have interpreted section 30621 to simply require it to "schedule" or "calendar" the hearing within 49 days after the filing of the appeal, but not commence it within that time period. The Commission has not done so, either in its regulations or in this proceeding, advancing instead an interpretation more consistent with the cited legislative intent to avoid bureaucratic delay and expedite the administrative process so as to obtain finality. Consequently, mindful the statutory scheme provides for but one public hearing on an appeal, the Commission's administrative construction is reasonable, that it need only to open the hearing and if three commissioners desire a debate on the question of substantial issue, it need only resolve the matter of its jurisdiction and then continue the matter in a timely fashion that will guarantee its timely action on the appeal consistent with the implied legislative intent to avoid bureaucratic delay.

To require the Commission to debate and vote on whether the appeal raises a substantial issue sufficient to consider the merits of the permit application de novo but prohibit it from continuing the matter beyond the 49-day limitation in order to obtain full briefing from its staff and permit meaningful oral argument and testimony from the parties would improvidently promote form over substance.

▆ We grant the language of section 30621 requiring a "de novo" hearing on appeals to the Commission, like former section 27423, subdivision (c), contemplates not simply a new public hearing, but that all matters

involved be decided "anew," "afresh," and "over again." (*REA Enterprises* v. *California Coastal Zone Conservation Com.*, *supra*, 52 Cal.App.3d at p. 613.) In other words, the Commission must hold an entirely new hearing evaluating all aspects of the permit application as if no decision had been previously rendered. (See *Boehm* v. *Anne Arundel County* (1983) 54 Md.App. 497 [459 A.2d 590, 597-599].) As already explained, the statutory scheme contemplates but one hearing. However, the Commission is required to determine its jurisdiction before hearing and evaluating the merits of the permit application. (See § 30625, subd. (b).) ■ Given that the statutory scheme contemplates but one hearing and requires the Commission to resolve the issue of jurisdiction regarding whether a substantial issue exists before entertaining an appeal, the Commission's interpretation of section 30621 as simply mandating the opening of a public hearing within 49 days after the date on which an appeal is filed is entirely consistent with that section's express language requiring a hearing to be timely set. To conclude otherwise would be unreasonable and, as the Commission argues, would create administrative impossibilities. For, under the Act, local governments and port districts prepare local coastal programs (LCP) and port master plans (PMP) for review and certification by the Commission. (§§ 30500-30526, 30700-30721.) Once an LCP or PMP is certified by the Commission, permit responsibility transfers from the Commission to the local government or port district. The Commission retains appellate jurisdiction over defined areas of the coastal zone covered by the certified LCP's or PMP's to ensure consistent application of Act policies on a statewide basis. (§§ 30519, 30603-30604, 30714.) As more and more LCP's and PMP's are certified, the Commission's responsibility shifts from initial permit review to appellate review. Requiring the Commission to completely hear every appeal de novo within 49 days would lead to great difficulties and would often be administratively impossible. For example, if Commission staff reviewed the Port District's decision and recommended the Commission find no substantial issue yet the Commission disagreed and found a substantial issue, the Commission could not proceed to hear the matter de novo, lacking its staff report and the evidentiary basis for such review. (Cal. Code Regs., tit. 14, § 13090.) Moreover, the Commission could not complete its environmental review within 49 days under those circumstances. Often it would be simply impossible to consider the matter de novo within 49 days of the filing of an appeal given the Commission due to budgetary restraints only meets once a month. Similarly here, because Commission staff had not completed its environmental review of the merits of the Club's application, under the Commission's regulations the matter was required to be continued.

In summary, the Commission's holding of a public hearing to resolve first the issue of jurisdiction within the 49-day limit of section 30621 and then

continuing the matter for de novo consideration of the merits of the permit application beyond that time limit in a reasonably timely fashion consistent with the implied legislative intent to avoid unnecessary bureaucratic delay, substantially, if not completely, complies with the legislative intent underlying the statutory language in controversy. Contrary to the Club's assertion, it was accorded all the requirements of constitutional due process it was entitled, as the matter was resolved in a timely fashion under section 30625, subdivision (a) and Government Code section 65952, a public hearing was held within 49 days as required by section 30621, the jurisdictional issue of whether a substantial issue existed was debated and resolved within that public hearing, and at the continued hearing it was afforded the opportunity to offer evidence on the merits of the matter and to confront that evidence offered against it. (See *In re Watson* (1979) 91 Cal.App.3d 455, 461 [154 Cal.Rptr. 151]; *Collins* v. *Superior Court* (1957) 150 Cal.App.2d 354, 363 [310 P.2d 103].) Under these circumstances, due process does not require the Club be afforded an opportunity to present testimony on the merits of its permit application and to hear the testimony of those opposed within the 49-day period.[6]

## DISPOSITION[7]

The judgment is reversed. Appellant to receive costs.

Kremer, P. J. and Todd, J., concurred.

---

[6]The failure of the Commission to formally vote on the continuance in accordance with California Code of Regulations, title 14, section 13023 does not result in any loss of jurisdiction over the Club's permit application given that statutorily it is simply required to hold the hearing within 49 days and decide the matter within 21 days of the conclusion of that hearing. Similarly, the failure to continue the matter to a specific date is of no import here.

[7]In light of our disposition, we do not address whether the Club's failure to object to the continuance of the de novo consideration of the merits of the permit application waived its rights to assert the statute of limitations bars the Commission's action and resulted in a loss of jurisdiction. Moreover, we need not address whether the constitutional rights of third parties would be adversely affected by the trial court decision the Commission lost jurisdiction before concluding the hearing on the appeal.